## INJURY FROM PARTICLES THROWN OFF BY MACHINERY.

Circuit Court of Cuyahoga County.

JOHN KUMP v. THE KILBY MANUFACTURING CO.

Decided, March 24, 1911.

*Negligence—Construction of Statute for Protection of Workingmen.*

While Section 4364-89c, Revised Statutes, requires owners and operators of factories and workshops to make suitable provisions for guarding all saws and wood-cutting and wood-shaping machinery so as to prevent injury to persons who may come in contact with them, it does not require that such machinery be so guarded as to prevent material or particles being thrown off from such machinery, to the injury of workmen using it.

*H. C. Boyd* and *C. W. Dille,* for plaintiff in error.
*Hoyt, Dustin, Kelley, McKeehan & Andrews,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

This was an action for damages for personal injuries sustained by the plaintiff December 15, 1909, by reason of the alleged

negligence of the defendant company in failing to properly guard a circular power saw, as required by the statutes.

Plaintiff alleges in his amended petition that he was a pattern maker and while cutting some prints for patterns ''and attempting to push a sawed-off piece of wood away from said unguarded saw, suddenly, by reason of the defendant's negligence in not guarding said saw, said wood was caught in the teeth of said saw and was hurled violently against said plaintiff's right eye, rupturing the eye-ball and permanently destroying the sight of the same.''

A verdict was directed for the defendant at the close of the plaintiff's evidence, the trial judge holding that the plaintiff had shown no violation of the statute relied upon, which is Section 4364-89c, Revised Statutes, the cause of the action having arisen before the adoption of the General Code.

The sole question here is whether the court below properly interpreted and applied said statute.

The original act was passed March 20, 1900, and is found in Volume 94 of Ohio Laws, at page 42, and is entitled: ''An act to provide for the guarding of machinery.''

The first section of the act provides:

''That owners and operators of factories and workshops, which terms shall mean all manufacturing, mechanical, electrical and mercantile establishments, and all places where machinery of any kind is used or operated, shall take ordinary care, and make such suitable provisions as to prevent injury to persons who may come in contact with such machinery, or any part thereof; and such ordinary care and such suitable provisions shall include casing or boxing of all shafting when operating horizontally near floors, or when in perpendicular or other position operating between, from, or through floors, or traversing near floors, or when operating near passageway, or directly over the heads of employees; the enclosure of all exposed cog-wheels, fly-wheels, band-wheels, all main belts transmitting power from engine to dynamo, or other kind of machinery, and all openings through floors, through, or in which such wheels or belts may operate, with substantial railing; the covering, cutting off, or countersinking of kegs, bolts, set-screws and all parts of wheels, shafting, or other revolving machinery, projecting unevenly from and beyond the surface of such revolving parts of such machinery; the railing in all of unused elevator openings, the placing of auto-

matic gates or floor doors, and the keeping of same in good condition, on each floor from which and whereon each side or sides, of elevator openings entrance to the elevator carriage is obtained, the frequent examination and keeping in sound condition of ropes, gearing, and other parts of elevators, the closing of stair openings on all floors, except where access to stairs is obtained, and the railing of stairs between floors, the lighting of hallways, rooms, approaches to rooms, basements and other places wherein sufficient daylight is not obtainable; the guarding of all saws and other wood cutting and wood shaping machinery, providing shifters for shifting belts, and poles or other appliances for removing and replacing belts on single pulleys, and adjusting runways, and staging used for oiling and other purposes, more than five feet from floors with hand railing, and providing counter shafting with tight and loose pulleys or such other suitable appliances, in each room, separate from the engine room, for disconnecting machinery from other machinery when in operation.''

The second section provides that any owner or operator of a factory or workshop who violates any provision of the first section shall be fined.

The third and fourth sections provide for inspection of shops and factories, to the end that the act may be enforced.

Section 4238c-1, Revised Statutes, abolishes the defense of assumed risk, where an employee has been injured by the negligent omission of his employer to guard or protect his machinery in the manner required by any penal statute of the state or United States, but limits the recovery to $3,000 where injury does not result in death.

The operative words of 4364-89c applicable to this case, which require construction, are as follows:

''The owners and operators of factories and workshops, which terms shall mean all places where machinery of any kind is used or operated, shall take ordinary care, and make suitable provisions so as to prevent injury to a person who may come in contact with any such machinery, or any part thereof, and such ordinary care and such suitable provisions shall include the guarding of all saws and wood cutting and wood shaping machinery.''

The trial judge held that the plaintiff could not recover in this case, because, in his judgment, the statute provided only for the

guarding of saws in such manner as to prevent any person being injured by coming in contact with the saw and did not require a guard which would prevent an injury by pieces of material thrown off by the saw and striking some person not in contact with the machinery.

The whole of this statute has been quoted so as to show how carelessly it was drawn. Other parts of the statute, not applicable to this case, have been before the courts. The Circuit Court of Lucas County, speaking by Kinkade, J., in the case of *Marine Boiler Works* v. *Shuck,* 13 C.C.(N.S.), 118, calls attention to the defect in the statute as to the protection of cog-wheels. On page 121 he says:

"It will be observed, as I have said, on a careful reading of this statute, that there is nothing in the section which provides that exposed cog-wheels shall be boxed or covered. The statute distinctly and plainly states that exposed cog-wheels shall be enclosed with a substantial railing. It is perfectly apparent to anybody that a railing in front of cog-wheels, if a man is obliged to have his hand near the cog-wheels, might be sufficient to protect his body from getting into contact with the cog-wheels, and at the same time have no effect in preventing his hand from coming in contact with the cog-wheels and being ground off. Of course it is not the business of the court to legislate; it is our business to find out what the statute says and declare it, and after the fullest consideration we have unanimously arrived at the conclusion that this statute, insufficient though it may appear in that form, provides only for a substantial railing to protect the one operating near exposed cog-wheels."

While this legislation has penal features, yet, on the other hand, it is humanitarian in its purposes, so that a middle course should be taken in its construction. A reasonable meaning should be given to the words used; not too narrow, because of its penal features, nor too liberal, on account of its remedial nature.

The attention of the court has been called to the wording of this statute, as now found in the General Code, Section 1027.

There it is made the duty of manufacturers to prevent injury to persons who use or come in contact with machinery. The question would be more difficult if the accident had happened since the adoption of the General Code; but, if the Legislature

intended to extend the scope of the statute by inserting the word "use," we are not helped by it. If, on the other hand, as claimed by counsel, the word "use" was inserted only as showing the interpretation put by the Legislature upon the meaning of the words "come in contact with," we can only say that this Legislature conceived the words to have a different meaning from that understood by the Legislature which adopted the act, and so we are left to pass our own judgment upon it, guided by the rules of construction referred to.

Without referring to the lexicographers' definitions, the ordinary persons would understand that the law here involved plainly means that employers of labor are required to guard saws so that employees may not be injured by coming in contact with them.

Had the Legislature intended that they should guard saws so that material or particles should not be thrown off from them to to the injury of workmen requiring other and different devices from those which prevent contact with the saws, such intention might have been clearly expressed in simple language, leaving no doubt as to the intention of the Legislature.

Two years before the act in question was adopted, the Legislature had before it the prevention of accidents from just such causes, where dust creating machinery is used, and we find that it required that blowers or similar apparatus be placed over, beside or under emery wheels, etc., in such manner as "to protect persons using the same from the particles of dust produced and caused thereby and to carry away the dust arising from or thrown off by such wheels or belts while in operation." R. S. 4364-86; 93 O. L., 155.

The danger in such cases apprehended is from objects thrown off from the machine; in the case of a saw the danger apprehended is from coming in contact with the saw. In other words, the Legislature had in mind the well known danger one runs of having his fingers cut off by coming in contact with a circular saw, if he uses it without a proper guard.

The record shows that a guard to prevent the cutting off of fingers does not prevent accidents such as befell the plaintiff.

The question here involved is not free from difficulty and doubt, and we are therefore unable to say that the trial judge was clearly wrong in directing a verdict for the defendant.

Judgment affirmed.